**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DAVID LANE and LORRAINE ANDA, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>DEWALT INDUSTRIAL TOOL CO., and STANLEY BLACK & DECKER, INC.<br><br>       Defendants. | Case No.  5:22-cv-1949<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs David Lane and Lorraine Anda (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant DeWALT Industrial Tool Co. ("DeWALT") and Stanley Black & Decker, Inc. ("B&D") (collectively, "Defendants') for the manufacture, marketing, and sale of the DeWALT 12-inch Sliding Compound Miter Saw products identified below. Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action against Defendants DeWALT Industrial Tool Co. and Stanley Black & Decker, Inc. for the manufacture and sale of its 12-inch Sliding Compound Miter Saws (collectively, the "Products"), all of which suffer from an identical defect in design.  Specifically, the rear safety guards can break or detach, posing a significant safety hazard for consumers.  Such a design defect is extraordinarily dangerous and has rendered the Products unsuitable for their principal and intended purpose.

2.      Due to the dangerous nature of the defect, Defendants initiated a recall (the "Recall") of its 12-inch Sliding Compound Miter Saws.[1]  However, the Recall is grossly inadequate, as it does not provide consumers, like Plaintiffs, with any monetary relief, and it fails to provide direct notice to consumers.

3.      Plaintiffs bring their claims against Defendants individually and on behalf of a class of all other similarly situated purchasers of the Products for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; (3) fraud; (4) unjust enrichment; (5) breach of implied warranties; and (6) violations of the Magnuson-Moss Warranty Act.

---

[1] https://www.cpsc.gov/Recalls/2022/DeWALT-Recalls-Nearly-1-4-Million-Miter-Saws-Due-to-Injury-and-Laceration-Hazards

## **PARTIES**

4.     Plaintiff David Lane is, and at all times relevant to this action has been, a resident of Oxnard, California.  In approximately March 2021, Mr. Lane purchased a DeWALT 12-inch Sliding Compound Miter Saw from a Home Depot store located in Oxnard, California.  Mr. Lane purchased the Product because he believed it was fit for use as a saw.  However, the Product Mr. Lane purchased was not fit for use as a saw due to the Product's malfunctioning safety guard.  Mr. Lane would not have purchased the Product had he known that the Product was unfit to perform its intended purpose, rendering the Product useless.

5.     The safety guard on the Product that Mr. Lane purchased malfunctioned shortly after he purchased it.  Mr. Lane no longer uses the Product because of the significant injury risk posed by the Defect.  The serial number on the Product purchased by Mr. Lane is 2020 39-CJ and is included in Defendants' product recall.

6.     Mr. Lane reviewed the Product's packaging prior to purchase. Defendants disclosed on the packaging that the Product was a saw and described features typical of saws but did not disclose the Defect.  Had there been a disclosure, Mr. Lane would not have bought the Product because the Defect would have been material to him, or at the very least, he would have purchased the product at a substantially reduced price.  Mr. Lane relied on the packaging in making his purchase decision.

7.     Plaintiff Lorraine Anda is, and at all times relevant to this action has been, a resident of Chino, California.  In approximately August 2021, Ms. Anda purchased a DeWALT 12-inch Sliding Compound Miter Saw from a Home Depot store located in Chino, California.  Ms. Anda purchased the Product because she believed it was fit for use as a saw.  However, the Product Ms. Anda purchased was not fit for use as a saw due to the Product's malfunctioning safety guard.  Ms. Anda would not have purchased the Product had she known that the Product was unfit to perform its intended purpose, rendering the Product useless.

8.     The safety guard on the Product that Ms. Anda purchased malfunctioned shortly after she purchased it and is included in Defendants' Recall. Ms. Anda no longer uses the Product because of the significant injury risk posed by the Defect.

9.     Ms. Anda reviewed the Product's packaging prior to purchase. Defendants disclosed on the packaging that the Product was a saw and described features typical of saws but did not disclose the defect.  Had there been a disclosure, Ms. Anda would not have bought the Product because the safety Defect would have been material to her, or at the very least, she would have purchased the Product at a substantially reduced price.  Ms. Anda relied on the packaging in making her purchase decision.

10.    Defendant DeWALT Industrial Tool Co. is a Maryland corporation with its principal place of business at 1646 Sulphur Spring Rd., Baltimore, Maryland. Defendant manufactures, markets, and distributes the Products throughout the United States.  Defendant sells its products directly to consumers in Home Depot, Lowes, and other retail stores.

11.    Defendant Stanley Black & Decker, Inc. is a Connecticut corporation with its principal place of business at 1000 Stanley Drive, New Britain, Connecticut. B&D owns DeWALT and is in the business of manufacturing, mass marketing, and distributing DeWALT Products throughout the United States.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

13.    This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this District because Plaintiffs purchased their Products in this District.

## COMMON FACTUAL ALLEGATIONS

**The Safety Guard Defect**

15.     Defendants are manufacturers of power and hand tools.  Among the various tools sold by Defendants are its 12-inch Sliding Compound Miter Saws, which are the Products at issue here.  The Products are identical and include those manufactured between April 2019 through April 2022, and include the DWS779, DSW780, and DHS790 models.

16.      The Products were made with a defective safety guard, which can break or become detached during the ordinary use of the Product (hereinafter, the "Defect").  The Defect results in the saw blade becoming exposed, posing a significant injury hazard.  In fact, Defendants have already received at least nine reports of laceration injuries resulting from the Defect.[2]  The Defect is substantially likely to materialize during the useful life of the Product.

17.     With over a million units sold at approximately $600 each, Defendants profited enormously from its failure to disclose the Product Defect sooner.

18.     The Defect at issue here involves a critical safety-related component of the Products, and it was unsafe to operate the Products with the defective safety guard.  Defendants had exclusive knowledge of the Defect, which was not known to Plaintiffs or class members.

19.     Defendants made partial representations to Plaintiffs and class members, while suppressing the safety defect.  Specifically, by displaying the Products and describing their features, the product packaging implied that the

---

[2] https://www.cpsc.gov/Recalls/2022/DeWALT-Recalls-Nearly-1-4-Million-Miter-Saws-Due-to-Injury-and-Laceration-Hazards

Products were suitable for use as a saw, without disclosing that they had a critical safety-related defect that could result in harm to users of the Products.

**Defendants' Inadequate Recall**

20.     On August 4, 2022, Defendants issued a recall of the Products.

21.     The recall was due to a serious injury hazard associated with the Products.  Specifically, Defendants admitted that its Products had a defect in design and materials that caused the rear safety guard to break or detach during use.

22.     Defendants sold over 1,250,000 Products in the United States.

23.     Importantly, Defendants are <u>not</u> offering consumers any monetary relief due to the Defect.

24.     The recall allowed Defendants to *say* it was doing right by its customers, but in fact the recall protected Defendants' profits by suppressing returns:

(a)     The recall notice was only briefly publicized;

(b)     Defendants' website contained a link to recall information, but the link was buried among a lengthy list of other links, and class members would not have a reason to follow the link if they did not already know about the recall in the first place;

(c)     Defendants did not email people who purchased Products online, despite the fact that email notice is a relatively low-cost and effective means of contacting consumers; and

(d)     Defendants only offered replacement units in connection with the recall.  Defendants did not offer cash refunds in lieu of a replacement, and customers' requests for cash refunds were generally denied;

**Defendants' Pre-Sale Knowledge Of The Defect**

25.     Years before issuing the recall, Defendants had received numerous reports of the Defect.

26.     The United States Consumer Products Safety Commission ("CPSC") operates a website where consumers can post complaints about unsafe products and provide details about any incidents they experienced.

27.     Online safety reports to the CPSC show that Defendants knew or should have known of the defect since at least 2019, yet it continued to sell the defective Products anyway.

28.     Per federal regulations, all safety reports that are submitted online through the CPSC website are sent directly to the product's manufacturer.  As set forth in more detail below, the CPSC website indicates that all safety complaints referenced herein were sent to Defendants, including the dates on which they were sent.  Defendants also monitor safety complaints from the CPSC, and thus Defendants would have independently become aware of each safety report referenced herein separate and apart from noticed received from the CPSC.

29.     The Recall includes Products that have been manufactured since April 2019.  Since that time, Defendant has received **571 reports** from consumers regarding the rear safety guard assembly (or related components) breaking or detaching, including nine reports of laceration injuries.[3]

30.     At minimum, such an unusually high number of reports about the same exact issue, as well as the severity of the injuries reported, should have alerted Defendants to the Defect and caused it to take immediate action to protect consumers.

31.     Every time the CPSC's website receives a consumer complaint, a copy of the complaint is automatically sent to the manufacturer, and the CPSC website discloses the when it was sent to the manufacturer.  This is separate from the portion of the safety complaint where the consumer states whether he or she independently

---

[3] https://www.cpsc.gov/Recalls/2022/DeWALT-Recalls-Nearly-1-4-Million-Miter-Saws-Due-to-Injury-and-Laceration-Hazards

contacted the manufacturer.  Therefore, all complaints were sent to Defendant by the CPSC shortly after being submitted to the CPSC.

32.     Defendants' management knew or should have known about the above-referenced reports as soon as they began appearing on the CPSC website in 2019:

(a)     First, Defendants were repeatedly contacted hundreds of times directly by consumers and/or by the CPSC about the Defect.

(b)     Second, the CPSC website is a government-run repository for complaints about safety-related defects, and many of Defendants' products appear on the website.  The CPSC website can provide businesses with early warnings of product defects, and monitoring reports is easy because users can search for reports by company names.  Hence, since at least 2019, it required negligible effort for Defendants' management and other personnel to visit the CPSC website, type "DeWALT" or "Black & Decker" in the search field, and view a list of reports of safety incidents related to DeWALT products, including reports about the Defect at issue here.

33.     In addition to receiving safety complaints from the CPSC, Defendants also knew or should have known about the Defect through reviews posted on its own website.  Indeed, multiple consumers posted product reviews about the Product's defective rear safety guard to Defendants' own website, www.dewalt.com, which is also monitored by Defendant Stanley Black & Decker, Inc.  A couple examples are below shown below.

34.     Approximately two years ago, a consumer posted a review on Defendants' website warning that the 12-inch Sliding Compound Miter Saw's "plastic saw blade cover/guide cracked and flew out of the saw."

1
2
3
4
5

**Brian**

Halton Hills.ON

Review **1**
Vote **1**

Age **65 or over**

Trade **Advanced DIY**

Experience **Advanced Do It Yourself (DIY)**

★☆☆☆☆ · 2 years ago

**Returned the 2019 model PLASTIC SAW GUARD**

Bought the 2019 model year saw at Home Depot .On the second cut the plastic saw blade cover/guide cracked and flew out of saw. I was not injured. However returned the saw as defective. Found a 2018 model year saw with medal guard. It cost more at Canadian Tire however saw worked much better- quieter motor and no issue with guard.

Recommends this product ✓ Yes

6
7
8
9
10

35.     Approximately two years ago, another consumer posted a review Defendants' website warning that the 12-inch Sliding Compound Miter Saw "had a plastic piece fall off the saw as I was cutting a board, and it hit the blade, and is now in pieces, and can't be put back on it (I feel it was a safety part)."

11
12
13
14
15

**leejr**

Michigan

Review **1**
Votes **0**

Age **45 to 54**

Trade **General Builder / Remodeler**

Experience **Construction Professional**

★★★☆☆ · 2 years ago

**Doesn't meet claims**

The dust collector clogs up almost instantly, the build quality isn't as good as their older saws, if your not carful, and make sure the blade stop is in position you will hit parts of the saw you don't want to hit with the blade, I had a plastic piece fall off the saw as I was cutting a board, and it hit the blade, and is now in pieces, and can't be put back on (I feel it was a safety part).

I do like the new cut line system, I feel it will work much better in bright light over the laser version, and the reason I gave 3 stars.

I will be trying to get the piece that fell off replaced, and will have to try to modify the dust tube in order for it to actually collect dust

16
17
18
19
20

36.     Approximately two years ago, another consumer posted a review on Defendants' website concerning the rear safety guard Defect in his or her 12-inch Sliding Compound Miter Saw.  The review stated: "during his very first cut the board kicked and broke the back part of the saw."

21
22
23
24
25
26
27
28

**RubyBear**

Heath, TX

Review **1**
Votes **16**

Age **25 to 34**

Trade **Advanced DIY**

Experience **Advanced Do It Yourself (DIY)**

★☆☆☆☆ · 2 years ago

**Wrong Blade**

Did not see these reviews until after an incident.

I bought this as a gift for my husband who is just getting started on DIY home projects.

Husband assumed proper blade would be packaged. WRONG... during his very first cut the board kicked and broke the back part of the saw. Lucky it didn't hurt him. After some investigation he realized it was packaged with a rip blade which is listed in the manual to NOT use on this product.

DeWALT needs to package the proper blade with it's products. This is something a seasoned carpenter may have caught right away but even then to spend another $60 when on a proper blade is ridiculous, not to mention the injuries that could be caused regardless of experience.

Recommends this product ✗ No

37.    Defendants would have seen the above-described warnings on its own website.  Online reputation management (commonly called "ORM" for short), is now a standard business practice among most major companies and entails monitoring consumer forums, social media and other sources on the internet where consumers can review or comment on products.  "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content, which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[4]  Many companies offer ORM consulting services for businesses.

38.    Like most companies, Defendants care about its reputation and regularly monitor online customer reviews because they provide valuable data regarding quality control issue, customer satisfaction and marketing analytics.  One and two-star reviews like those displayed above would be particularly attention-grabbing for Defendants' management because extreme reviews are sometimes the result of extreme problems, and—just like any other company—Defendants are sensitive to the reputational impact of negative on-line reviews.  Hence, Defendants' management knew or should have known about the above-referenced consumer complaints shortly after each complaint was posted on Defendants' company website.

39.    Defendants' management also knew or should have known about the Defect because of the similarity of complaints to the CPSC and on Defendants' website.  The fact that hundreds upon hundreds of customers made similar complaints about the same product indicates that the complaints were not the result of user error or an anomalous incident, but instead a systemic problem with the Product.  Here, the reports and complaints from consumers—whether made directly

---

[4] https://en.wikipedia.org/wiki/Reputationmanagement#Online_reputation_management

to Defendants employees, posted on Defendants' website, or forwarded from the CPSC—were similar enough to put Defendants management on notice that the incidents described were the result of a defect, and that the Products were experiencing unusually high levels of complaints about a defective rear safety guard.

40.     Defendants also would have had notice of the Defect as a result of product warranty claims.  Before accepting a return or performing a repair, DeWALT's policy is to ask each customer for a description of the request and to keep track of the reasons given.  Descriptions provided with returns and/or repair requests of the Products therefore would have disclosed the defect.

41.     In short, by 2020 at the latest, information from customer returns, complaints directly to DeWALT, negative reviews on the DeWALT website, and information obtained from the CPSC, whether alone or in the aggregate, would have put Defendants on notice of the Defect.

## CLASS REPRESENTATION ALLEGATIONS

42.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

43.     Plaintiffs also seek to represent a subclass of all Class Members who purchased the Products in the State of California (the "California Subclass"). Excluded from the Class are persons who made such purchases for purpose of resale.

44.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

45.     At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and Subclass ("Class Members" and "Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling Defendants' Products, Plaintiffs believe that Class and Subclass members are so numerous that joinder of all members is impracticable.

46.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

(b)     whether Defendants' conduct was unfair and/or deceptive;

(c)     whether Defendants have been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiffs and the Class;

(d)     whether Plaintiffs and the Class sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

47.     With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendants violated the California Consumer Legal Remedies Act as well as California's False Advertising law.

48.     Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Defendants' Products, and Plaintiffs sustained damages from Defendants' wrongful conduct.

49.     Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the Class or the Subclass.

50.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

51.     The prosecution of separate actions by members of the Class and the Subclasses would create a risk of establishing inconsistent rulings and/or

incompatible standards of conduct for Defendants.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the Subclasses even where certain Class or Subclass members are not parties to such actions.

<u>**COUNT I**</u>
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code § 1750, *et seq.***

52.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

53.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

54.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

55.     Defendants violated Civil Code § 1770(a)(5), (a)(7) and (a)(9) by holding out Products as fit for use as saws, when in fact the products were defective, dangerous, and useless.

56.     The safety guard defect at issue here involves a critical safety-related component of the Products, and it was unsafe to operate the Products with the defective rear safety guard.

57.     Defendants had exclusive knowledge of the Defect, which was not known to Plaintiffs or class members.

58.     Defendants made partial representations to Plaintiffs and class members, while suppressing the safety defect.  Specifically, by displaying the product and describing its features, the product packaging and Defendants' website implied that the product was suitable for use as a saw, without disclosing that the Products had a critical safety-related defect that could result in harm to users of the Product.

59.     Plaintiffs and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

60.     On October 11, 2021, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendants a CLRA notice letter, which complies in all respects with California Civil Code §1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.

61.     Plaintiffs and the Subclass members seek only injunctive relief, and any other relief deemed appropriate and proper by the Court.

## COUNT II
### (Violation California's Unfair Competition Law)

62.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

63.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

64.     By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§

17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

65.     Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

66.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

67.     As more fully described above, Defendants' misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

68.     Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

69.     Plaintiffs and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled product.

70.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Products.

71.     Plaintiffs and the other California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

72.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such

conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the California Subclass.

73.    Pursuant to California Business and Professional Code § 17203, Plaintiffs and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendants to: (a) provide restitution to Plaintiffs and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; (c) pay Plaintiffs' and the California Subclass' attorney's fees and costs.

### COUNT III
**(Fraud by Omission)**

74.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

75.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

76.    This claim is based on fraudulent omissions concerning the safety of consumers who use the Products.  As discussed above, Defendants failed to disclose that the Products had a dangerous Defect.

77.    The false and misleading omissions were made with knowledge of their falsehood.  Defendants are nationwide hardware distributors who knew of reports of the Products' defective and dangerous nature.  Nonetheless, Defendants continued to sell its worthless saws to unsuspecting consumers.

78.    The false and misleading omissions were made by Defendants, upon which Plaintiffs and members of the proposed Class and California Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and members of the proposed Class and California Subclass to purchase the Products.

79.     The fraudulent actions of Defendants caused damage to Plaintiffs and members of the proposed Class and Subclass, who are entitled to damages and punitive damages.

## COUNT IV
### (Unjust Enrichment)

80.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

81.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants.

82.     Plaintiffs and Class members conferred benefits on Defendants by purchasing the Products.

83.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants failed to disclose that the Products were unfit for use as saws.  These omissions caused injuries to Plaintiffs and Class members because they would not have purchased the Products if the true facts were known.

84.     Retention of those moneys also is unjust and inequitable because, as alleged above, Defendants commenced an ineffective recall that was calculated to result in few returns, and no refunds, thereby protecting profits Defendants collected from selling the defective products.

85.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court.

## COUNT V

**(Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq*. and California Commercial Code § 2314)**

86.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

87.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants.

88.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq., and California Commercial Code § 2314, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.  In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose (here, to be used as saws) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

89.    The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

90.    Plaintiffs and the Class members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

91.    Defendants are in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

92.    Defendants impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it

must satisfy both of these elements.  Defendants breached these implied warranties because the Products were unsafe and defective.  Therefore, the saws would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

93.     Plaintiffs and Class members purchased the Products in reliance upon Defendants' skill and judgment in properly packaging and labeling the Products.

94.     The Products were not altered by Plaintiffs or Class members.

95.     The Products were defective at the time of sale when they left the exclusive control of Defendants.  The Defect described in this complaint was latent in the product and not discoverable at the time of sale.

96.     Defendants knew that the Products would be purchased and used without additional testing by Plaintiffs and Class members.

97.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased the Products if they knew the truth about the products, namely, that they were unfit for use as saws.

## COUNT VI
**(Breach of Implied Warranty Under the Uniform Commercial Code U.C.C. §§ 2-314, *et seq.*)**

98.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

99.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants.

100.    Defendants, as the designers, manufacturers, distributors, and/or sellers, impliedly warranted that the Products were merchantable with respect to goods of that kind.

101.    Defendants breached the warranty implied in the contract for the sale of the Products because they could not pass without objection in the trade under the

contract description, the goods were not of fair average quality within the description, the goods were not fir for the ordinary purpose for which such goods are used, the goods are not adequately contained, packaged, and labeled, and the goods do not conform to the promises or affirmations of fact made on the container and label.  As a result, Plaintiffs and members of the Class and Subclass did not receive the goods as impliedly warranted by Defendants to be merchantable.

102.   Plaintiffs and members of the Class and Subclass purchased the Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

103.   The Products were not altered by Plaintiffs or members of the Class or Subclass in a manner that would cause a defect in the rear safety guard.

104.   The Products were defective when they left the exclusive control of Defendants.

105.   Defendants knew that the Products would be purchased and used without additional testing by Plaintiffs and Class and Subclass Members.

106.   The Products were defectively designed and unfit for their intended purpose, and Plaintiffs and Class and Subclass Members did not receive the goods as warranted.

107.   As a direct and proximate result of Defendants' breach of the implied warranty, Plaintiffs and Class and Subclass Members have been injured and harmed because (a) they would not have purchased the Products on the same terms if they knew that the Products have a safety Defect; and (b) the Products do not have the characteristics, ingredients, uses or benefits as promised by Defendants.

## COUNT VII
### (Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)

108.   Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

109.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

110.   The Products are consumer products as defined in 15 U.S.C. § 2301(1).

111.   Plaintiffs and the Class and Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

112.   Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

113.   In connection with the marketing and sale of the Products, Defendants impliedly warranted that the Products were fit for use as saws.  The Products were not fit for use as saws due to the defect described in the allegations above.

114.   By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiffs and the Class and Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and the Class and Subclass members.

115.   Plaintiffs and the Class and Subclass members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products if they knew the truth about the defective nature of the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a.   For an order certifying the nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

b.   For an order declaring the Defendants' conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclass on all counts asserted herein;

d.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.   For pre-judgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of monetary relief;

g.   For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

### **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  November 3, 2022                          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____ */s/ L. Timothy Fisher* _____

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am counsel for Plaintiffs, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiffs reside in this District.

3.      Plaintiff David Lane is a resident of Oxnard, California.

4.      Plaintiff Lorraine Anda is a resident of Chino, California.

5.      Defendant DeWALT Industrial Tool Co. is a Maryland corporation with its principal place of business at 1646 Sulphur Spring Rd., Baltimore, Maryland.

6.      Defendant Stanley Black & Decker, Inc. is a Connecticut corporation with its principal place of business at 1000 Stanley Drive, New Britain, Connecticut.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on November 3, 2022, at Walnut Creek, California.

/s/ *L. Timothy Fisher*
L. Timothy Fisher